DICKENSON B. MOREHOUSE, Appellant, v. WILLIAM A. PHELPS, Appellee.

APPEAL FROM JO DAVIESS.

The term "legal representative" as used in the law of congress entitled "An act authorizing the laying off a town on Bean river (Fevre river), in the State of Illinois, and for other purposes," etc., is designed to describe a party in interest, who had succeeded to the right of the deceased party, who had received the permit, or made the requisite improvement, and by virtue of which the land is authorized to be entered. The administrator of such deceased party is not entitled to take the benefit of the law, by virtue of his appointment. Whoever succeeded to the right of the settler, by operation of law, or by grant, is his legal representative.

THIS action was originally brought against one Bradner Smith, the tenant in possession of certain lots in the city of Galena, holding under Dickenson B. Morehouse, the administrator of one Robert P. Guyard, deceased. The said Morehouse became the co-defendant in the court below, and brings this case into this court by appeal.

The declaration of the plaintiff in the court below was filed on the 29th day of November, A. D. 1851, and he sought to recover the possession of the undivided half of lots 8 and 9, on Water street, in the city of Galena.

This case was tried in the court below on the 27th day of October, 1856, and a verdict was found for the plaintiff, and the

said Morehouse, the co-defendant of the said Bradner Smith, prayed an appeal to this court, which was granted.

The plaintiff, to maintain his action, first introduced in evidence to the jury an instrument, of which the following is a copy:

MINERAL POINT, CRAWFORD COUNTY, }
MICHIGAN TERRITORY, Nov. 8, 1829. }

To Capt. T. C. LEGATE, *Supt. U. S. Lead Mines :*

SIR: I have this day sold, transferred, and set over, and by these presents do grant, bargain, sell, transfer and set over unto William A. Phelps, his heirs and assigns, all my right, title, and interest or claim whatsoever in and to three lots of ground I own in the town of Galena, Jo Daviess county, Illinois, situated on the Wharf Row (the numbers not recollected), supposed to be lots 4, 5 and 6, or 5, 6 and 7, bounded as follows: On the east by Fevre river, on the west by Main street, or a tri-angular square, and on the south by a lot granted to me in the spring of 1828, and sold by me to M. Burnett, and on the north by a street, alley, or other lots. The most southern of these three lots was granted by permit to myself in the spring of 1828; the other two adjoining were granted to John Ward and Nathaniel Johnson, one lot to each, and by them transferred to me, all of which is entered on record in the permit book.

Given under my hand and seal, this the 8th of November, 1829.

R. P. GUYARD. [SEAL.]

Approved November 9, 1829.

THO. C. LEGATE, *Supt. U. S. L. M.*

The said instrument was proved and recorded in the proper county, February 5, 1848.

The plaintiff then introduced in evidence to the jury, the certificate of Silas Noble, register of the Dixon land office, certifying that the legal representatives of R. P. Guyard, D. B. Morehouse, of the county of Jo Daviess, etc., did, on February 20, 1838, purchase of the general government lots eight and nine, in dispute in this case.

Also the patents for the said lots. Also the record book of the commissioners to adjust and settle the preëmption claims to lots in Galena, which record book was admitted to be the record and adjudications of the commissioners appointed to settle preëmptions to lots in Galena, and read in evidence therefrom the following order:

"The legal representatives of Robert P. Guyard claim lot originally No. 5, under present survey No. 8, Wharf Row, and in support of their claim produced a certified copy of a permit granting the same to Nathaniel Johnston, dated April 6, 1828, signed Tho. McKnight, with a transfer indorsed thereon, assigning the same to the said Robert P. Guyard and D. B. Morehouse.

"The commissioners are of the opinion that the legal representatives of Robert P. Guyard are entitled to a preëmption to said lot No. 8, embracing 47 feet front on Water street, running westwardly 59 feet by 79 feet, containing .08 of an acre of the first class."

The said order is crossed out on the said record book, and across the face thereof is written as follows: "See page 344." On the margin of the page of the said record book on which said order is entered, is written as follows: "Certificate issued, see page 344." At the bottom of the said order is also written, "see page 344."

An order in the said record book, in the same language in regard to lot No. 3, was also read to the jury, which said order was crossed out the same as the above order and the same reference made to page 344.

The plaintiff further read in evidence, from the same record of the commissioners, the following adjudication and award by the same commissioners:

"The legal representatives of Robert P. Guyard claim one undivided half of lots originally Nos. 5 and 6, under present survey Nos. 8 and 9, Water street, and Dickenson B. Morehouse claims the other half of the said lots, and in support of their claim produced evidence that the said lots were improved, in the year 1828, by said Robert P. Guyard and Dickenson B. Morehouse. The commissioners are, therefore, of the opinion that the legal representatives of Robert P. Guyard are entitled to a preëmption to an undivided half of lots Nos. 8 and 9, and Dickenson B. Morehouse the other half of the said lots.

The plaintiff further read in evidence two several acts of congress, in regard to laying off a town on Bean river, one approved February 5, 1829, and the other approved July 2, 1836.

The plaintiff then introduced two witnesses to establish the identity of the said lots.

The defendants, to maintain the issues on their part, first introduced and offered in evidence the letters of administration granted to Dickenson B. Morehouse, on the estate of Robert P. Guyard.

The defendants then introduced and examined as a witness *Daniel Wann,* who testified, that John Turney, Samuel Leach, and himself, were appointed and acted as commissioners to settle the preëmptions to lots in Galena, under the act of congress, and the amendment thereto, that have been read as testimony in this case. That said commissioners had a clerk, and kept a record of their proceedings, and identified the record being the same in evidence in this case. That after they organized, they appointed Mr. Craig to survey the town;

they gave notice for all persons to come in and prove up their claims to lots. The commissioners proceeded to act under the instructions they had, and complied with the law and instructions. We required the party claiming lots to produce and file proof in writing, showing that he was entitled to the same under the law, and if we adjudged the proof sufficient, we granted duplicate certificates, one to be given to the claimant to go to the local land office and enter the lot mentioned therein at the minimum price, the other to be sent to the general land office. D. B. Morehouse appeared before the commissioners and filed a claim for himself and as administrator of R. P. Guyard's estate, to lots eight and nine, now in dispute, and the same were awarded to D. B. Morehouse, and the legal representatives of R. P. Guyard. No other person claimed the lots. The deed offered in evidence was never presented to me, and never before the board, or offered in evidence before the commissioners, and I can state, to the best of my recollection, that neither Phelps nor any person for him ever offered the deed (the one offered and read by the plaintiff) before the commissioners, and claimed said lots, as I would have remembered the deed if ever I had seen it before. On cross-examination this witness stated, that there was an award, in the first place, to the legal representatives of R. P. Guyard alone, which was reconsidered, and the final award was to D. B. Morehouse, and the legal representatives of R. P. Guyard. Witness does not remember the reason of the change, but supposes additional proof was introduced. The first award may have been entered when only two of the commissioners were present. Do not remember who prosecuted the claim when that first entry was made. Afterward, when Mr. Leach came on, they examined them all, and made the final awards.

The defendants then offered and read in evidence the certificates of the commissioners aforesaid, certifying that the legal representatives of R. P. Guyard and D. B. Morehouse were entitled to preëmptions to the lots eight and nine.

The defendants then offered in evidence, and read to the jury the following record and proceedings of the general land office:

GALENA, Nov. 14, 1828.

Mr. R. P. GUYARD and D. B. MOREHOUSE,

To JOSEPH TAYLOR, Dr.

To building a wall on lots Nos. 5 and 6, Wharf Row, 122 feet, and 4 feet high, and 3 feet thick, at $2.50 per perch, $148.31.

Received payment in full, JOSEPH TAYLOR.

Morehouse *v.* Phelps.

COMMISSIONER'S OFFICE, }
GALENA, Nov. 22, 1836. }

D. B. Morehouse, on his oath, says, in the year 1828, that R. P. Guyard and D. B. Morehouse improved lots originally No. 5 and 6, under present survey 8 and 9, Wharf Row, and paid to Joseph Taylor $148.31, for building a wall on the said lots, and possessed the same in the year 1829.

D. B. MOREHOUSE.

Sworn to before the undersigned,
DANIEL WANN,
JOHN TURNEY.

Joseph Taylor, on his oath, says, that he is acquainted with facts set forth in the foregoing bill and affidavit, and that they are both true and correct.

JOSEPH TAYLOR.

Sworn to before the said commissioners.

COMMISSIONER'S OFFICE, }
GALENA, ILL., Feb. 20th, 1838. }

We certify, that the legal representatives of Robert P. Guyard and Dickenson B. Morehouse, are entitled to a preëmption to lot No. 8, etc. (giving a description of the lot).

Signed by all the commissioners.

Also, another certificate, bearing the same date, and in the same form, certifying that the same parties are entitled to a preëmption to lot No. 9.

No. 224. LAND OFFICE, }
GALENA, ILL., Feb. 20th, 1838. }

I do hereby certify, that the legal representatives of Robert P. Guyard and Dickenson B. Morehouse, according to the certificates of the commissioners appointed to investigate title of lots in the town of Galena, are entitled to a preëmption to lot No. 9 (describing the said lot).

HENRY B. TRUETT, *Register.*

No. 224. RECEIVER'S OFFICE, }
GALENA, ILL., Feb. 20th, 1838. }

Received from the legal representatives of Robert P. Guyard and D. B. Morehouse, of Jo Daviess county, Illinois, the sum of five dollars —— cents, being in full payment for lot No. 9, etc. (describing said lot.)

$5,00. JOHN DEMENT, *Receiver.*

LAND OFFICE, }
GALENA, ILL., Feb. 20th, 1838. }

IT IS HEREBY CERTIFIED, That, under the provisions of the act of congress approved on July 2d, 1836, entitled, etc. (the act for laying out a town on Bean river), the legal representatives of Robert P. Guyard and Dickenson B. Morehouse, of Jo Daviess county, Illinois, have this day purchased lot No. 9 (describing lot) for five dollars, which they have paid in cash to the receiver of public moneys (it appearing by the certificate No. ——, of the commissioners appointed under the said act, that they were entitled to become the purchasers of the said lot as a preëmption right for that sum, it being in the first class).

Morehouse v. Phelps.

Now KNOW YE, That on the presentation of this certificate to the commissioner of the general land office, the said legal representatives of Robert P. Guyard and Dickenson B. Morehouse shall be entitled to receive a patent for the said lot.

HENRY B. TRUETT,

*Register of the Land Office.*

(Indorsed on the preceding certificate of the register, is the following certificate of the receiver) :

LAND OFFICE, }
DIXON, ILL., July 18th, 1845. }

IT IS HEREBY CERTIFIED, That, on the 15th of February, 1828 (1838?) the legal representatives of Robert P. Guyard and Dickenson B. Morehouse purchased the within described lot as set forth within, for which they shall be entitled to receive a patent upon the presentation of the certificate to the commissioner of the general land office.

JOHN DEMENT, *Receiver.*

Here follow precisely the same certificates of the register and receiver in regard to lot No. 8, as are immediately above set forth, and then the following certificate of the commissioner of the general land office :

GENERAL LAND OFFICE, May 3, 1856.

I, Thomas A. Hendricks, Commissioner of the General Land Office, do hereby certify that the annexed are true and literal exemplifications of the original papers on file in this office.

IN TESTIMONY WHEREOF, I have hereto subscribed my name and caused the seal of this office to be affixed, at the city of Washington, on the day and year above written.

[SEAL.] THOMAS A. HENDRICKS,

*Commissioner of the General Land Office.*

The defendants then offered and read in evidence the petition of the said D. B. Morehouse, the administrator of R. P. Guyard, to the circuit court, praying for leave to sell real estate to pay the debts against the estate of the said Guyard, the said petition embracing the interest of the said Guyard in the original lots five and six, which said petition was filed August 15, 1836.

The defendants then offered and read in evidence the depositions of *William Hempstead*, and the patents for the lots eight and nine. The said witness deposed that he had been the general agent of said Dickenson B. Morehouse since 1840, and while acting as his agent, he deposited with him (witness) a number of duplicate receipts of the receiver of the land office at Galena, and upon which he obtained the patents, among others, of lots eight and nine, attached to his depositions, and then shown to him. The witness further stated that he received the said patents at the land office at Dixon,

Illinois. With the duplicate receipts of the receiver for said lots, he also deposited, or left with the then receiver of the land office at Dixon, the duplicate preëmption certificates for said lots, signed by the commissioners, all of which he received from said Dickenson B. Morehouse, for the purpose of procuring from the land office the patents for the said lots for said Dickenson B. Morehouse.

The defendants then introduced and examined *Charles S. Hempstead*, who testified, that he had acted as the attorney of said Morehouse, and as such attorney had made out the petition for him as administrator of Guyard's estate, asking the sale of these lots, among others. That he was the owner of the other half of the lots in controversy. That several years ago these lots were a mud hole. That he had leased them several years ago, and had charge and possession, and drawn rent on said lots ever since. Since the first corporation tax was paid in 1836, I have collected the rent and paid the taxes up to this time for said Morehouse, as the administrator of R. P. Guyard's estate. The plaintiff, in this case, was the first man to dispute the title in 1847. That I have always been in possession of said lots, for myself and as the agent of Morehouse, the administrator of Guyard. I was frequently before the commissioners for myself and others, and I know that Morehouse represented lots eight and nine before the commissioners.

The following is a copy of the patent for lot *eight* attached to the deposition of William Hempstead:

*The United States of America, to all to whom these Presents shall come, Greeting :*

WHEREAS, The legal representatives of Robert P. Guyard and Dickenson B. Morehouse, of Jo Daviess county, Illinois, have deposited in the general land office of the United States a certificate of the register of the land office at Galena, whereby it appears that full payment has been made by the said legal representatives, as above named, according to the provisions of the act of congress of July 2d, 1836, entitled "An act entitled 'an act authorizing the laying off a town on Bean river (Fevre river), in the State of Illinois, and for other purposes,'" approved February 5th, 1829, for lot numbered eight, fronting forty-seven feet on Water street and running westwardly sixty-nine by seventy-nine feet, containing eight-hundredths of an acre, in the town of Galena, according to the official plat of the survey of the said town returned to the general land office, which said lot has been purchased by the said representatives of Robert P. Guyard and Dickenson B. Morehouse.

Now KNOW YE, That the United States of America, in consideration of the premises and in conformity with the several acts of congress in such case made and provided, have given and granted, and by these presents do give and grant unto the said representatives of Robert P. Guyard and Dickenson B. Morehouse, and to their heirs, the said lot above described; to have and to hold the same,

Morehouse *v.* Phelps.

together with all the rights, privileges, immunities, and appurtenances of what-soever nature thereunto belonging, unto the said representatives of Dickenson B. Morehouse, their heirs and assigns forever, as tenants in common and not as joint tenants.

In testimony, etc.    Dated January 1, 1846.

By the President:

[SEAL.]                                JAMES K. POLK,

By J. KNOX WALKER, *Secretary.*

The patent for lot nine is in the same form and bearing the same date.

CATON, J.    This is the same case which was before us in 15th Ill. R. 572, under the title of *Phelps* v. *Smith,* and it is brought here again, as the only channel through which it may be taken to the supreme court of the United States, whose prerogative it is, to give a final and authoritative construction, to all acts of congress.    If we have misconstrued the meaning of the words, "legal representatives," as used in the acts of congress under consideration, it will afford us pleasure to be set right by that court, and we shall be happy to afford every facility for taking the case to that tribunal.    Although the case has again been elaborately argued, and has been care-fully reviewed by this court, we have been unable to arrive at any other conclusion than that expressed, when the case was formerly before us.    In expressing the views of this court on that occasion, I said, "Nothing can be more clear to my mind than that the term 'legal representative' as used in this law, was designed to describe a party in interest, whose identity was uncertain, and that by that description it was intended to designate the person or party, who had succeeded to the right of the deceased, and by virtue of which right alone, the law of congress authorizes the land to be entered.    It was the design of the law, that no one should be permitted to enter the land, except the party who had received the permit or had made the improvement, or one who had in some legal mode succeeded to the right of such party.    If any others were allowed to enter it, it was a fraud upon the law.    Such is the undoubted meaning of the act of congress, and it is equally clear, that the phrase 'legal representative' must receive the same construction, when used in the judgment or certificate of the commissioners, and in the patent issued thereon.    It may be true, that the commissioners had the right to award the preëmption to a particular person by name, as the legal representative of Guyard, and that had the patent issued to such person, by name, it would have been conclusive at least in a court of law, although another might be able to show that he was, in fact, the true legal representative.    Indeed, the

presumption must be, that when it was satisfactorily shown who was, in truth, the legal representative of the deceased; the certificate would be granted directly to such person. And whenever the mere descriptive term 'legal representative' was used, it shows that the commissioners were in doubt, as to who, in truth, held the right which had once existed in the deceased; or at least, that they did not choose to determine that question, but rather chose to leave it open, to be determined by further investigation by courts of law. And such, indeed, was the only prudent course for the commissioners to pursue; for it was well known then, as it is manifest now, that claims were likely to be preferred and prosecuted by those, who would, apparently succeed to the rights of the deceased as the heirs, executors or administrators, in total ignorance of the fact, that the deceased had, in his lifetime, granted away to others, the very rights which they were claiming to exercise. Although the commissioners may have supposed, and Morehouse himself may have believed, that he, as administrator, was, in truth, the legal representative of Guyard, as respects this right of preëmption; yet if he was, in truth, not such legal representative, such supposition or belief, could not change the fact or the law, and make him the legal representative, and enable him, in truth a stranger, to take the grant by such designation. Suppose the law had authorized it, and the certificate had been given and the patent issued to 'the heirs at law of Guyard,' would proof that any stranger had appeared before the commissioners and prosecuted the claim as heir, enabled him to take the grant by that designation, simply because the commissioners supposed he was the heir and as such was entitled to the right? It is the patent which grants the land, and that was the act of the government and not of the commissioners. And we cannot presume that the government had any intent in issuing the patent, beyond that which is expressed on its face. The grantee is not named, but is described in the patent, and he, and he alone, who bears and can maintain that description, can take by the grant. The grant is to the legal representatives of Robert P. Guyard, and it would be strange indeed, if the one who is such representative should not be allowed to take the thing granted; but that it should go to one who, as a matter of law and of fact, is not the legal representative to whom the conveyance runs."

The fact that Morehouse was the administrator of Guyard, and that he presented the claim before the commissioners, and got the preëmption allowed, and subsequently made the entry and paid the purchase money at the land office, has been urged upon the present argument with peculiar emphasis, as showing, that he alone was meant in the certificate of the

commissioners, and in the patent, by the descriptive designation of "legal representatives of Robert P. Guyard." To our comprehension, this position has been satisfactorily answered by what has been already quoted. We take it to be a matter, at this day not open to controversy, that whoever succeeded to the right of Guyard, as the original settler, either by operation of law or by grant, is his legal representative, within the meaning of the act of congress, and, consequently, within the meaning of the certificate of the commissioners and of the patent; for the expression must have the same meaning in each. Now if Phelps was the grantee of Guyard, and as such was his legal representative, the right was as absolutely vested in him, as if he had been the original settler, and there was no right left in Guyard, which could descend to his heirs, or pass to his administrator, any more than if he had not been the original settler, but had always been a stranger to it. If his grant to Phelps divested him of his right of preëmption and conferred it upon his grantee, there was nothing left, which could go to his heirs or administrator. They could acquire no right upon his death, for he had none at that time. Nothing but the decision of the highest tribunal in the government, can convince me, that something can be made out of nothing; that a right could be acquired where none existed. To my mind it is a question which will not bear argument, that Morehouse was not the legal representative of Guyard as to this preëmption right, but that Phelps was. Indeed, that has not been controverted during the whole course of the argument, except so far as objection was taken to the deed from Guyard to Phelps, for the want of an expressed consideration, and which we do not think is tenable. Holding that deed to be good, no right could pass to Morehouse as the legal representative of Guyard, for none existed in his intestate. Still he was not an intermeddler without right, in the claim which he presented and prosecuted before the commissioners. He was an undisputed owner in his own right of one undivided half of the preëmption right, and in establishing his own right, he necessarily and unavoidably also established the right of the owner of the other undivided half, whoever he might be. His appearance before the commissioners, and prosecution of the claim, and subsequent entry of the land in the name of himself and of the legal representatives of Guyard, was perfectly consistent with his true position, and the rights of Phelps, who was that legal representative. Indeed the language of the certificate and of the patent, is inconsistant with the claim now set up by Morehouse, that he was intended as the sole preëmptor and grantee. It is "to the legal representatives," etc., in the plural. Had it been the intention of the commis-

31

sioners to award the right and of the government to grant this half of the land to him, as the sole representative of Guyard, he would have been described in the singular and not in the plural number, as was done in both cases. We must understand that he appeared and acted only in that capacity which was consistent with the integrity of his position, and not presume that he intended to perpetrate a fraud upon the government, by obtaining a preëmption and grant to himself, if he was not entitled to it, and upon the true representative of Guyard, if he did not himself occupy that relation. Although himself and the commissioners and the government, may all have supposed, or thought it probable, that he was the true representative, and by the description of the grantee adopted as such, would take under the grant, yet as that was not certainly known to be the case, the only prudent and just course was so to word the grant that the true representative should take, though he might be another than Morehouse. The position contended for, that the individual, whoever he might be, who appeared before the commissioners and claimed to be the legal representative must be held to be the grantee, by that designation, would require us to give the land to any stranger who might, in fraud of the government and of the true owner of the right, appear and by false pretenses impose himself upon the commissioners and the government as such, and it would frustrate the manifest and prudential object of both, in awarding the right and in granting the land to the party or parties by designation instead of by name, a course capable of preventing, and undoubtedly designed to prevent, the possibility of imposition or mistake.

Had Phelps appeared before the commissioners as the representative of Guyard, and proved his deed under which he claims the right, and the certificate and patent had been issued in the precise terms which were employed, then by the very terms of the argument now attempted to be answered, he would have taken; under the descriptive terms used, to designate the grantee. In that case, he would have been no more the legal representative of Guyard than he now is, and would no more have answered the description expressed in the patent. It is the conveyance by Guyard to him of the right, which gives him the character of representative. What, are courts to recognize the mere claim of right, in preference to the actual existence of a right, established by legal proofs? I trust it will be long before such a principle meets a sanction in a court of justice; long before so wide a door shall be thrown open to invite the entrance of fraud and imposition, glaring fraud upon the rights of absent parties, and gross imposition upon the just intentions of the government. This

case must establish a principle, the consequences and operation of which must reach far beyond itself. We find no error in the decisions of the circuit court. I have intentionally abstained from discussing several minor questions which the affirmance of the judgment must necessarily decide against the appellant; preferring to confine the opinion to the construction of the act of congress, and the language used in the patent issued under it, that our judgment may be reviewed unembarrassed by any question of jurisdiction.

The judgment of the circuit court must be affirmed.

*Judgment affirmed.*