F. M. MOORE v. MARY E. QUINCE et al.

*Marriage Settlement—Trust and Trustee—Evidence—Deed—*
*Construction and Reformation of.*

1. Equity will not permit a trust to fail for the want of a trustee; and where it can be seen from the face of the instrument creating the trust, either, by its express terms, or from the nature of the transaction, or the context, that it was the purpose of the grantor to convey an estate in fee, a Court of Equity will correct and reform the deed by supplying the technical words necessary to carry out the intention of the grantor.

2. A woman, in contemplation of marriage, conveyed property to a trustee, "his executors and administrators," in trust for her sole and separate use for her life, and then in trust for such child or children as she might leave surviving; but if she should "die without making any last will and testament, then, and in that case, the said property shall become the property of J. M. (the husband), and the said trustee shall reconvey to the grantor or to the said J. M., or the survivor of them."  The wife died intestate and without issue, but leaving the husband surviving: *Held*, that the instrument upon its face contained sufficient evidence of a

manifest purpose of the grantor to convey an estate in fee to the trustee in trust for the grantor for her life, and in the event of her death intestate and without issue, that he should reconvey the property to the husband in fee, and that a decree directing the reformation of the deed in those respects should be made.

This was a CIVIL ACTION, tried at April Term, 1891, of NEW HANOVER Superior Court, before *McIver, J.*

The plaintiff introduced evidence tending to show the execution and loss of the deed of marriage settlement set up in the pleadings.

It was admitted that the contemplated marriage took place between the said Sally J. Freeman and James Moore; that she thereafter died intestate and without issue, leaving her said husband, James Moore, surviving; that after the death of his said wife the said James Moore died intestate, and that the plaintiff is his only heir at law.

Plaintiff then contended that, upon an inspection of the deed of marriage settlement, it sufficiently appeared upon the face thereof that it was manifestly the intention of all parties thereto to give an estate in fee-simple to the said James Moore in the event of his surviving his wife Sally J. Freeman, and she dying intestate and without issue; but by the mistake, inadvertence or oversight of the draughtsman of said deed, the words "and his heirs" were left out next after the words "shall become the property of the said James Moore," in the said deed, and prayed the Courts to reform and correct the said deed accordingly by supplying the necessary words.

Upon the close of the plaintiff's evidence, the defendants demurred to the evidence, and the plaintiff joined in the demurrer, and, after argument by counsel, the Court gave judgment for defendants, from which plaintiff appealed.

Plaintiff excepted to the refusal of the Court to hold with the plaintiff and to reform the said deed as prayed, and appealed from so much of said judgment as holds "that

there is no sufficient evidence before the Court to show that the word "heirs" was left out of the same (meaning deed of marriage settlement) by mistake or inadvertence, as is alleged in the second cause of action in the complaint.

The marriage settlement was as follows:

"Whereas a marriage is shortly to be had and solemnized between James Moore, of the county of Chatham, State of North Carolina, and Sally J. Freeman, of the same county and State; and whereas it has been agreed between the parties, with the consent of the said James Moore, which is evidenced by his signing this deed of conveyance, that the said Sally should settle for her sole use and benefit all her real and personal estate so that the same shall in no wise be subject to the debts, liabilities or contracts of her said intended husband, but that the said Sally may have and enjoy the same as if she was sole owner, notwithstanding the said marriage. Now, therefore, this deed witnesseth that the said Sally J. Freeman, for and in consideration of the premises and of one dollar to her in hand paid by Henry A. London, of said county and State, before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath given, granted, bargained and sold and by these presents doth give, grant, bargain and sell unto the said Henry A. London, his executors and administrators all and singular the following property, to-wit:

All the lots and houses in the city of Columbia, South and Lower Carolina, all the houses and lots in the town of Wilmington, N. C., owned by the said Sally J. Freeman, together with all appurtenances thereunto belonging or in any wise appertaining, also all money, bonds or evidence of debts due to her, the said Sally J. Freeman, also all furniture or other property of a personal nature. In special trust and confidence, nevertheless, that the said Henry A. London shall hold the said lots and houses, and money and bonds and furniture to the sole and separate use of the said Sally J.

Freeman until the celebration of the said contemplated marriage, and after the said contemplated marriage shall have been celebrated between the said parties the said Henry A. London, trustee aforesaid, shall hold the said lots and houses, money or bonds and furniture and other property in special trust for the sole and separate use of the said Sally J. Freeman so that the same shall in no wise be responsible for the debts or contracts of the said James Moore; and it is further understood and agreed that the said trustee shall and will permit the said Sally J. Freeman to use any or all of the said property above described in any way that she, in her own judgment, may deem proper, and if the said trustee shall rent out any or all of said lots and houses, or dispose of any of said property at any time during the coverture of the said Sally J. Freeman, he shall pay over the said rents or other money derived from said property to the said Sally J. Freeman, and her receipt for the same shall be a sufficient discharge and acquittance for the same, notwithstanding her said coverture; and it is further understood and agreed that if the said Sally should die during the said coverture, that the said trustee shall hold the said property to the use and benefit of such child or children as the said Sally may leave surviving her, for them and their legal representatives, unless the said Sally, by her last will and testament, duly executed, shall otherwise direct, which last will and testament it is agreed the said Sally may make, publish and declare, notwithstanding her said coverture. But and if the said Sally shall die without making any last will and testament, then and in that case the said described property shall become the property of the said James Moore, and the said trustee shall re-convey to the said Sally, or to the said James, or the survivor of them, the said property above described, and the said trustee is in no wise responsible for any of the rents or profits of said property except such as may come actually into his hands.

In testimony whereof the said James Moore, Sally J. Freeman and Henry A. London, the trustee, have hereunto set their hands and seals, this 19th day of April, 1867."

*Messrs. E. S. Martin* and *George Rountree*, for plaintiff.
*Mr. Junius Davis*, for defendant.

AVERY, J.: It is settled law, not only that equity will not allow a trust to fail for want of a trustee, but that when a trustee is named in a deed and the nature of his fiduciary duties and the times at which they are to be performed, according to its terms, indicate clearly that the grantor contemplated either the certainty or possibility that the legal and equitable estates must be separated and the trust administered beyond the life-time of the trustee named, a court of equity will supply the words " and his heirs," after the name of the trustee upon the ground that it was omitted by mistake of the draughtsman when the deed was drawn. *Ryan* v. *McGehee*, 83 N. C., 500; Perry on Trusts, § 320.

Where the Court is fully satisfied from the expressed purpose of the grantor, the nature of the deed and the context of that portion of it where the word " heirs" would naturally belong, that it was his intention to convey an estate in fee, and the omission of the prescribed technical words was an oversight, there is a plain equity to have the mistake corrected. *Vickers* v. *Leigh*, 104 N. C., 248; *Rutledge* v. *Smith*, Busbee's Eq., 283.

When, on the examination of an ordinary deed of conveyance to trustees or marriage settlement, it appears manifest that a life-estate in the trustee is inadequate to the execution of the trust, and also that the obvious purpose of the grantor to dispose of the whole of the equitable estate will be defeated, unless the instrument can be construed to vest that estate in fee-simple in the beneficiaries, the concurrence of two reasons for supplying words of inheritance

makes it more clearly the duty of the Court to effectuate the intention of the grantor by correcting both mistakes or omissions.

The general purpose pervading the deed of settlement seems to have been to make a final disposition in any contingency of the real as well as the personal property of the wife, but the particular provisions of the deed, construed literally and according to technical rules, are strangely at war with what appears to have been the leading intent of the parties in entering into it.

The deed provides for the disposition of the fund derived from the sale by the trustee of any of the property without distinguishing between real and personal; but that clause is less indicative of the intent than some subsequent ones. The trustee, who, without enlargement beyond the words of the deed, takes but a life-estate, is, in case the wife dies during coverture, to hold " *the said property to the use and benefit of such child or children, as the said Sally may leave surviving her for them and their legal representatives,*" unless the wife (Sally) should dispose of it by will, which she is empowered to make. The words " *legal representatives* " are often used (as we must gather from the context is their meaning here), in the sense of heirs at law. *Briggs* v. *Upton,* 7 Ch. Ap. Repts., 376; *Kreber* v. *Bryan,* 6 Serg. & R. (Pa.), 81; *Delany* v. *Bumet,* 4 Gil. (Ill.), 454; *Morehouse* v. *Phelps,* 18 Ill., 472.

It could not have been intended that the land in this case should go to anyone who, by the proper authority, might be appointed a personal representative of a surviving child of the wife and, therefore, the inevitable inference is that the words were used to mean the children and heirs at law of such children of Mrs. Moore as might die during her life leaving issue who, also, should survive their grandmother. *Bowman* v. *Long,* 89 Ill., 19.

If we construe the deed literally, supplying no ellipsis, the consequence would be that the trustee, who holds the legal

estate in the land for life only, would be expected to dis-
charge the trust for the wife, for the husband if she should
die intestate during his life and without issue, and if she
should die during coverture, leaving issue and also intestate,
then for the benefit of the first and second generations of
the issue, and on failure of lineal descendants for the heirs
at law of such issue.   The lands would not, without supply-
.ing words of inheritance, be finally disposed of by the deed,
except in the event that Mrs. Moore should devise them in
fee during coverture.   We think it was the manifest pur-
pose, by the marriage settlement, to give Mrs. Moore the
power to make a final disposition of the land and other
property by will, but if she should fail to exercise that power
during coverture, and there should also be a failure of issue
of the marriage, then the intention was to clothe the trustee
with power to convey the land in fee-simple to the survivor,
whether James Moore or his wife.   But in the absence of
words of inheritance appended to the names of both, any
possible construction of the deed would lead to very absurd
conclusions.   If Mrs. Moore had outlived her husband, the
trustee, London, would have been required to reconvey to
her, as survivor; yet if he took the legal estate under the
settlement only for his own life, he could convey to her an
estate for the residue of his own life and no longer.   Now
that James Moore became the survivor, and there was no issue
of the marriage, it became the duty of the trustee to "*recon-
vey*" *to him* as survivor, and, as he has died since the death
of his wife, he must convey to his only heir at law.   Shall
we hold that the trustee could have conveyed to him on the
death of his wife only an estate *per outer vie*, and in case of
London's death during his life, that the remainder in fee
would have passed to her heirs at law, leaving her husband,
then still living, without any interest, and, for aught we
know, without home or income?

We are constrained to conclude that the word "reconvey"
was used upon the assumption that the legal estate had pre

viously passed in *fee*, and that the reconveyance was as necessary to revest the entire estate in the wife, if she should survive, as in the surviving husband, it being the purpose to give him, at her death, without issue and intestate, just the same estate as would have been reconveyed to the wife. This view is strengthened by the consideration that the deed of settlement was executed in the year 1867, when, in the absence of any agreement, the husband would have become the owner of the whole of the personal property immediately upon the consummation of the marriage rite and entitled to the contingent right to courtesy in the whole of her land, an estate for his own life being more advantageous than that for the life of London. It does not entirely destroy the force of this fact to admit, as we do, that the contemplated marriage was a consideration for some concessions on his part. But the fact that he surrendered such rights incident to the marriage, adds some weight to the view that it was intended, by the provision for re-conveyance, that if she should die without issue, and without availing herself of the power to provide by will for any favored one among her heirs at law, the re-conveyance to her husband should pass the *fee* just as if made to herself.

We conclude, therefore, that the Judge erred in refusing to allow the deed to be reformed by inserting the words "and his heirs," after the name of James Moore, as proposed, on the ground that there was no sufficient evidence, and we think, likewise, that the manifest intention of the parties was to pass the legal estate in *fee* to the trustee London, and, to use the words "and his heirs" in the *habendum* instead of "his executors and administrators." The deed must be reformed accordingly, and the trustee should be required then to re-convey in *fee* to the plaintiff, who is the only heir at law of the husband James Moore. There is error, and the judgment must be reversed.

Reversed.