C. F. VICKERS et al. v. R. S. LEIGH et al.

*Deed, Correction of—Evidence.*

E. executed a deed to his two children (naming them), in which it was recited and provided that he had "given and granted unto my said children a certain tract of land (describing it). I do hereby appoint S. guardian of my said children, with full power and authority as the law may direct to guardians, and, whenever my said children may come to the age of twenty-one, will be entitled to take possession of said land, free from all costs.   *   *   *   At the same time, it is to be considered that the above deed of gift will not take place till my death and the death of my wife": *Held*, that the deed contained conclusive intrinsic evidence of the vendor's intention to convey to his children a fee-simple estate, after the death of himself and wife, and that the necessary technical words had been inadvertently or ignorantly omitted, and that, in an action to correct the deed in that respect, the Court would, upon an inspection of the instrument, grant the relief.

This was a CIVIL ACTION, tried at the June Term, 1889, of the Superior Court of DURHAM County, before *Bynum, J.*

The plaintiffs' assignor, John Hinton Ellis, was the son of one Nathan Ellis, and the plaintiffs are the heirs at law of Anne Maria Vickers, a daughter of Nathan Ellis, through whom both parties claim title. The plaintiffs alleged, that the word "heirs" was, by mistake, omitted from a deed executed by said Nathan Ellis to his children, the said Anne Maria and John Hinton Ellis, dated February 16, 1824, and asked judgment that said deed be reformed. The deed is as follows:

"To all people to whom these presents shall come, I, Nathan Ellis, of the county and State aforesaid, send greeting: Know ye that I, the said Nathan Ellis, for and in consideration of the natural love and affection which I have and bear unto my children, Anne Maria and John Hinton, by my present wife, Patsy Leigh, and for other

good causes and considerations hereunto moving, have given and granted, and do, by these presents, give and grant unto my said children above mentioned, a certain tract or parcel of land, lying and being in the county of Orange, on the waters of the Third Fork, containing one hundred acres, more or less, where Richard Leigh now lives, late the property of John Leigh, deceased; and I do hereby authorize and appoint my brother-in-law, Sullivan Leigh, guardian of my said children above mentioned, with full power and authority, as the law may direct to guardians, and whenever my said children above mentioned may come of the age of twenty-one, will be entitled to take possession of said land and premises, free from all costs; but it is to be considered, that should my said wife, Patsy Leigh, have other children by me, to come in with my other children, Anne Maria and John Hinton, and be entitled to have an equal part of said land; at the same time it is to be considered that the above deed of gift will not take place till my death and the death of my wife, Patsy Leigh.

"In witness whereof, I have hereunto affixed my hand and seal, the 16th day of February, one thousand eight hundred and twenty-four."

It was admitted to probate shortly after its execution, and registered in 1846.

Anne Maria Ellis married Riley Vickers in 1846; Nathan Ellis died in 1846, Patsy Ellis in 1851, Sullivan Leigh i 1854, Riley Vickers in 1879, and Anne Maria Vickers i 1885. The plaintiffs are heirs at law of Riley and Anne Maria Vickers, and the defendants the heirs at law of Sullivan Leigh. Nathan Ellis and his heirs have been in continuous uninterrupted possession of the land in question from 1824 to the present time, using it as their own, and the plaintiffs are now in possession thereof. Neither Sullivan Leigh, nor any one claiming under him, has attempted to recover said land.

The following deeds and papers were introduced and read in evidence:

1. Richard Leigh to Sullivan Leigh, deed, dated June .. 1823.

2. Sullivan Leigh to Nathan Ellis, deed, dated February 16, 1824.

3. Nathan Ellis to John H. and Anne Maria Ellis, deed, dated February 16, 1824.

4. James C. Turrentine, Sheriff of Orange County, to Sullivan Leigh, deed, dated May 23, 1836.

5. Sullivan Leigh to W. N. Pratt, deed, dated September 1, 1836.

6. Nathan Ellis to Sullivan Leigh, bill of sale of personalty, dated August 24, 1838.

7. Patsy Ellis to Sullivan Leigh, deed, dated February 2, 1846.

8. John H. Ellis to Riley Vickers, deed, dated May 15, 1846.

The plaintiff alleges, also, that Sullivan Leigh bought the land in controversy at Sheriff's sale under a parol agreement to convey to Nathan Ellis, and had the deed of Turrentine, Sheriff, dated May 23, 1836, executed to himself; and that said Sullivan Leigh suppressed bidders at said sale by stating that he was buying for Nathan Ellis, and that Nathan Ellis subsequently repaid to Leigh the amount that the latter bid and paid to the Sheriff for the land.

A number of witnesses were offered to establish the parol trust, chiefly by showing declarations of said Sullivan Leigh. It is not material to give the testimony and the exceptions to its admission, for reasons that appear in the opinion of the Court.

The issues and responses to them are as follows:

1. Was the word "heirs" omitted, by mistake of the draughtsman, from the deed of 1824 of Nathan Ellis to his children? Answer: Yes.

2. Did Sullivan Leigh purchase the land in suit at the Sheriff's sale, May 23, 1836, under an agreement made with Nathan Ellis before the sale, that he (Sullivan Leigh) would buy and hold the same as trustee for Nathan Ellis and his heirs, and that, upon repayment of the purchase money, he would re-convey to the said Ellis and his heirs? Answer: No.

3. Has the purchase money so paid by Sullivan Leigh been repaid to him? Answer: Yes.

4. Was the deed of Nathan Ellis to his children (made February 16, 1824) intended by him to convey the land therein described to them and their heirs? Answer: Yes.

5. Did Sullivan Leigh, by his conduct, words or acts, suppress bidding at the Sheriff's sale, in 1836, by representing that he was buying the land for Nathan Ellis and his wife? Answer: Yes.

6. Have ten years elapsed since the commencement of the parol trust alleged by the plaintiffs? Answer: Yes.

7. What is the annual rental value of the land? Answer: Eleven hundred dollars.

### JUDGE'S CHARGE.

A deed is a solemn act, in transactions concerning land— the most solemn known to the law, because of the special importance of its contents. It is the presumption of the law that a deed correctly shows and contains the intentions of the parties thereto, and the law gives it weight as a paper of high dignity. Therefore, the disposition of the law is to sustain every deed as it is written, and not to allow any change or amendment in it.

The Court instructs you that in this case there is no positive evidence of the intention of Nathan Ellis to create an estate in fee in his children by his deed of February 16, 1824, and no such evidence that the word "heirs" was left out of the said deed by mistake or ignorance of the

draughtsman.    Unless the evidence is strong, clear and convincing, it is the duty of the jury to sustain that deed as it is written.    A mere preponderance of the testimony will not be sufficient to justify a finding for the plaintiffs.

Where it is sought to convert the purchaser of a tract of land at public sale into a trustee, upon the ground that he made the purchase as the agent of the debtor, the legal title having been made to the purchaser, mere parol proof that the purchaser admitted the trust will not be sufficient to entitle the plaintiffs to relief.    There must be proof of facts and circumstances inconsistent with the idea of a purchase for himself; and, where the facts and circumstances relied on as corroborating the purchaser's declarations are unsatisfactory and susceptible of various and contradictory conclusions, some of which are consistent with the defendants' claim, they will not be deemed sufficient to establish the trust.    To establish a parol trust in one who has acquired the title to land, something more than the simple declaration of the person sought to be charged is required; there must be proof of acts in connection therewith, inconsistent with a purpose on his part to purchase or hold the land for himself absolutely.

A Court will require *clear, strong* and *convincing* proof to annex a parol trust to a deed absolute on its face.    Something more than mere preponderance of testimony is required. In this case there is no direct evidence that Sullivan Leigh, prior to the Sheriff's sale, made any verbal agreement with Nathan Ellis, or Patsy Ellis, or their children, that he would purchase the land for them and allow them to redeem on payment of the purchase money, and there is no evidence of any kind that he ever made any such agreement with the children ; and, before the jury would be warranted in finding such an agreement between Sullivan Leigh and Nathan Ellis and his wife, the circumstances relied on to

show that fact must be sufficiently strong, clear and convincing to prove that fact to their satisfaction.

In this case there is no evidence the money used in purchasing the land at Sheriff's sale in 1836 was furnished by Nathan Ellis, or his wife, or children, and no evidence of inadequacy of price; and the question for the jury is, Is the evidence sufficiently strong and convincing, that Sullivan Leigh did agree with Nathan Ellis and his wife to buy it and allow them to redeem it, and did they redeem it, or did Sullivan Leigh buy it and let Ellis and his wife and their children, John Hinton and Anne Maria, hold it for their life?

The admission of Sullivan Leigh, if the jury shall believe the evidence, made after the Sheriff's sale, of a trust antecedently created, are insufficient in themselves to establish the parol trust, or to show the equity which is sought to be enforced by the plaintiffs.

That the deed from Nathan Ellis to John H and Anne Maria Ellis having been executed and recorded in February, 1824, and the deed from Turrentine, Sheriff, to Sullivan Leigh having been recorded in May, 1836, was notice to the parties and to the world of the title that each of them claimed, and an action to reform the one by having the word "heirs" inserted, and to engraft a parol trust upon the other, should have been brought within ten years from the registration of said deeds. otherwise the plaintiffs and those under whom they claim would be presumed to have abandoned their equitable rights, and the burden is upon the plaintiffs, by clear, strong and convincing evidence, to satisfy the jury that they have not abandoned it.

The defendants excepted to the charge as given, and because his Honor declined to give the special instruction asked for by them.

Upon the verdict, as rendered by the jury, and their findings in response to the issues submitted, defendants

moved for judgment, and excepted to the refusal of the Court to sign the judgment offered.

Defendants' special instructions, which his Honor declined to give as prayed:

4. In this case the jury are instructed that there is no evidence that Sullivan Leigh, prior to the Sheriff's sale, made any verbal agreement with Nathan Ellis, Patsy Ellis, or the children, that he would purchase the land for them and allow them to redeem on payment of the purchase money, and there is no valid trust created between the parties which will be enforced.

5. In this case there is no evidence that the money used in the purchase of the land at Sheriff's sale in 1836 was furnished by Nathan Ellis, no evidence of any prior agreement between Ellis and Leigh, no inadequacy of price—Leigh simply getting the remainder after the life estate of John Hinton and Anne Maria Ellis—and no evidence whatever sufficient to engraft a parol trust on the deed from Sheriff Turrentine to Sullivan Leigh.

7. To entitle the plaintiffs to recover for slander of title of real property, express or actual malice must be shown, and if the words were used in asserting defendants' claim of title, after having consulted with counsel, who advised him that his claim to title was valid, no malice can be inferred by the jury, and the plaintiffs cannot recover damages for slander of title.

8. That there is no evidence that the word heirs, or other word of inheritance, was omitted by mistake of the draughtsman from the deed of Nathan Ellis to John Hinton and Anne Maria Ellis.

9. That the deed from Nathan Ellis to John Hinton and Anne Maria having been executed and recorded in February, 1824, and the deed from Turrentine, Sheriff, to Sullivan Leigh having been recorded in May, 1836, was notice to the parties and to the world of the title that each of them

claimed, and an action to reform the one by having the word heirs inserted, and to engraft a parol trust upon the other, should have been brought within ten years from the registration of said deeds, otherwise the plaintiffs and those under whom they claim would be presumed to have abandoned their equitable rights.

10. That, if the jury believe that Sullivan Leigh purchased the land at the Sheriff's sale upon trust for Nathan Ellis and his wife Patsy Ellis, and their heirs, then Nathan Ellis and Patsy Ellis became, in equity, seized of said land in fee by entireties, and Patsy Ellis, having survived Nathan Ellis, became, as survivor, sole seized of said land, and the fee passed by her deed of May, 1846, and became vested in Sullivan Leigh, and plaintiffs cannot recover.

His Honor charged—

4. In this case there is no direct evidence that Sullivan Leigh, prior to the Sheriff's sale, made any verbal agreement with Nathan Ellis, or Patsy Ellis, or their children, that he would purchase the land for them and allow them to redeem on payment of the purchase money, and there is no evidence of any kind that he ever made any such agreement with the children, and, before the jury would be warranted in finding such an agreement between Sullivan Leigh and Nathan Ellis and his wife, the circumstances relied on to show that fact must be sufficiently strong, clear and convincing to prove that fact to their satisfaction.

5. In this case there is no evidence that the money used in purchasing the land at Sheriff's sale in 1836 was furnished by Nathan Ellis, or his wife, or children, and no evidence of inadequacy of price; and the question for the jury is, Is the evidence sufficiently strong and convincing that Sullivan Leigh did agree with Nathan Ellis and his wife to buy it and allow them to redeem it, and did they redeem it, or did Sullivan Leigh buy it and let Ellis and his wife and their

children, John Hinton and Anne Maria, hold it for their life?

9. His Honor added to defendants' ninth instruction: " And the burden is upon the plaintiffs, by clear, strong and convincing evidence, to satisfy the jury that they had not abandoned it."

The plaintiffs tendered a judgment, to be signed by the Judge, reforming the deed by writing the words " and their heirs" after the names of the grantees, and also declaring Sullivan Leigh a trustee and requiring him to convey to plaintiffs.

The defendants moved the Court to declare that there was no sufficient evidence of the mistake, or of the parol trust, and that the finding that the purchase money had been repaid to Sullivan Leigh was inconsistent with the findings in response to the issues, and was not warranted by the evidence.

The Court rendered judgment as follows:

" It is thereupon considered and adjudged by the Court that, upon the evidence before the jury, and their finding in response to the issues, the plaintiffs are not entitled to have the deed corrected, and that, notwithstanding the verdict of the jury, the defendants are entitled to judgment of this Court. It is, therefore, adjudged and decreed that the defendants are the owners in fee-simple of the lands described in the pleadings, after the death of John Hinton Ellis; that, until the death of John Hinton Ellis, the plaintiffs are the owners of the land; that the defendants are not entitled to the immediate possession of the one-half interest of Anne Maria Vickers, the deed of Nathan Ellis to John Hinton Ellis and Anne Maria Ellis vesting in them an estate for their joint lives and the life of the survivor, and that, until the death of John Hinton Ellis, the defendants take nothing, and, at the death of John Hinton Ellis, the defendants are entitled to the remainder in fee-simple; that the defendants

are not entitled to any rents and profits arising from the land until after the death of John Hinton Ellis; that the defendants recover their costs."

Both parties appealed.

*Mr. W. W. Fuller*, for the plaintiffs.

*Messrs John W. Graham* and *John Manning*, for the defendants.

AVERY, J.—after stating the facts: The trend of judicial decisions for years has been toward relaxing the rigor of the common law rule, that, without words of inheritance, no estate of greater dignity than for life could be created by deed.   While devises were held, after the statute of wills, to be but a species of alienation, the Courts construed them more liberally than deeds, and where, without the use of the word "heirs," as by inserting the word "forever," the testator indicated an intent to pass an estate in fee, it was held, on the ground that testators were generally *inops consilii*, that the instrument should be so interpreted as to effectuate his purpose.   Then followed the liberal principle in the Act of 1784 (*The Code*, § 2180), that a devise of real estate to any person should be held to be a devise in fee, unless it plainly appears from some part of the will that the testator intended to convey an estate of less dignity.   The liberal tendency of the age in reference to deeds culminated in the Act of 1879 (*The Code*, § 1280), providing the same rule of construction for deeds as for devises.   But, prior to the passage of that statute, this Court had, in numerous cases, held that, where the word "heirs" was inserted out of the *habendum* in a deed, unless it plainly appeared to be a part of the covenant of warranty, or of quiet enjoyment, the deed would be construed by transposing it to its proper place in order to create an estate in fee, and this ruling was predicated upon the

idea of carrying out the apparent intent of the grantor as nearly as the rules of law would admit. *Phillips* v. *Thompson,* 73 N. C , 543; *Phillips* v. *Davis,* 69 N. C., 117; *Hodges* v. *Fleetwood,* 102 N. C., 122.

Citing Coke and Kent, Judge DANIEL, in *Armfield* v. *Walker,* 5 Ired., 580, says: "It is a rule of law that, if two constructions can be placed on a deed, or any part of it, that shall be given to it which is most beneficial to the grantee."

The idea of giving effect to the grantor's purpose, gathered from every part of the deed, led this Court, in administering the principles of equity, to announce the doctrine that when the Court was entirely satisfied from the declared purpose and nature of a deed, and the context of that portion where the word "heirs" would naturally belong, that it was the intention of the grantor to convey a fee-simple, and the omission was an oversight, there was a plain equity to have the mistake corrected. *Rutledge* v. *Smith,* Busbee's Eq., 283.

The facts, appearing from the face of the deed, are very clearly indicative of the intent of Nathan Ellis the grantor. After reserving an estate for the joint lives of himself and wife he conveys the remainder to the two children, at that time the only issue of his marriage with his said wife, but with a proviso that any child thereafter born of the marriage with her should take an equal share with the two already *in esse.* The deed further provides, that Sullivan Leigh, the brother of his wife (under whom the defendants claim), should, as guardian of the children, have authority incident to that relation over the land till they should arrive at the age of twenty-one, when they would " be entitled to take possession of said land and premises free from all costs." 'It is most unnatural to conclude that a father, having provided a maintenance for life for himself and wife, and *attempted by deed* to appoint a guardian for the two children, who are the only issue of the marriage, should con-

vey to them simply a life estate, limited upon that reserved for himself and wife, and leave the remainder in fee-simple undisposed of, when he seemed to be making permanent provision for the present and prospective issue of his marriage after the death of his wife and himself.

So, looking to the nature of the deed, and the plain purpose of providing for his infant children after the death of his wife and himself, that is apparent from its terms, we must declare in furtherance of this manifest purpose, ascertained from the wording of the deed, that there was a mistake of the draughtsman in failing to insert after the names of the said children, in the deed above mentioned, the words, "and their heirs forever.

It is not necessary for us to consider all the exceptions relied upon by the parties in presenting their respective appeals in this Court. His Honor should have held, upon an inspection of the deed executed by Nathan Ellis, February 16, 1824, and admitted to have been properly proven and registered, that it should be corrected as already indicated. It would follow that the plaintiffs were entitled to judgment that the deed be reformed as directed, and for costs of action. The fact that his Honor submitted the first and fourth issues to the jury, involving questions of law, does not impair the rights of the defendants, as the jury decided them correctly. A large number of exceptions relied on by the defendants become immaterial now, for the reason that they related to testimony offered to prove, by parol, the mistake that we have held is shown with sufficient clearness by the language of the deed. Exception numbered twenty, based upon the refusal of the Court to give instructions asked by the defendants, and numbered four and eight, or to tell the jury, as requested at the close of the evidence, that the plaintiffs had not offered sufficient testimony to support a finding that there was a mistake in response to the first issue, are of this character, though the Judge did

tell the jury, in substance, what was asked, and disregarded the finding in response to the first issue after verdict.

The verdict on the second issue was in favor of the defendants, and they have not suffered by reason of any error in the admission of testimony tending to establish the parol trust. It is, therefore, unnecessary to consider objections to its competency, and this disposes of exceptions numbered from 9 to 19, both inclusive, and the exceptions to the refusal of the Court to give instructions Nos. 4, 5, 9 and 10, asked by the defendants.

The first objection grew out of the competency of a juror because he was interested, as a creditor, in a fund for which W. W. Fuller, as receiver, had brought suit. The juror was not a party to an action pending and at issue in Court, and, therefore, did not come under the description in the disqualifying statute. The exception will not be sustained.

The objection to the admission of the deeds read in evidence was not insisted upon. If it had been, however, we see no reason for excluding them when first offered, as at that preliminary stage his Honor could only pass upon the question whether the deeds had been proven and registered as required by the statute. The relevancy of such deeds, generally, cannot be made manifest till a later period in the development of a case.

The deed from Nathan Ellis to John Hinton Ellis and Anne Maria Ellis, executed February 16, 1824, having been duly proved and registered, was, of course, competent, as the whole controversy depended upon the construction given to it.

There was no error in admitting the other deeds introduced to show that the defendants claimed title from Nathan Ellis, the same source from which plaintiffs derived title. These deeds were offered as a foundation for attaching a parol trust to the purchase of Sullivan Leigh; but, as the jury found, in accordance with the instructions given by the Court, that there was no agreement on his part to purchase for Nathan

Ellis, the admission of the testimony has wrought no injury to the defendants, and will not avail them as ground for asking a new trial or a judgment on the verdict.

We conclude, therefore, that in defendants' appeal there was no error. In plaintiffs' appeal there was error, and the judgment must be reversed. The plaintiffs are entitled to judgment declaring and correcting the mistake in the deed, as pointed out, and for costs.

Error on plaintiffs' appeal; on defendants' appeal, no error.