· SMITH v. PROCTOR.

(Filed October 17, 1905).

*Deeds—Indefiniteness of Description—"Heirs"—Trust Estates—Rule in Shelley's Case—Tax Title—Color of Title—Adverse Possession.*

1. A deed conveying "a certain portion of land, adjoining the lands formerly belonging to B and others, on both sides of the road leading to N——, to contain forty acres to be taken from the tract where G now resides," is void for vagueness and indefiniteness.

2. Prior to the Act of 1879 (section 1280 of The Code), the word "heirs" was generally held necessary to create a fee in deeds conveying the legal title, but it was not so in devises nor in equitable estates, where it was generally held that an estate of inheritance would pass without the word "heirs," if such was the clear intent of the parties.

3. Whenever the word "heirs" appears in an instrument as qualifying the interest of the grantee and indicative of his estate, whether in the premises, the *habendum* or the warranty, same will be transposed and inserted in that portion of the deed which will cause the same to operate as a conveyance of a fee simple interest, when such was the purpose of the grantor.

3½. A deed conveying the legal estate, without the word "heirs" will be held to convey an estate of inheritance if the same on its face contains conclusive, intrinsic evidence that a fee simple was intended to pass and that the word "heirs" was omitted by mistake.

4. A trustee will take by implication of law a fee in the estate when the duties of the trust require it, although the conveyance is in terms of life estate or fails to use the word "heirs."

5. Where a deed conveyed a tract of land to a trustee and his survivors, in trust for H during his life, and in the event of H not leaving lawful issue, the trustee to convey to the heirs of G, but in case of lawful issue of H, then the trustee to make title to heir of H, the entire estate passed, the trustee holding for H during his life and then in trust to convey the land to the lawful children of H, and the exigencies of the trust having terminated on the death of H leaving children, the statute will execute the unnecessary portion of the estate.

6.　Where the words "heir of H" in the deed is clearly not intended to denote the whole line of heirs to take in succession as said heirs from "generation to generation," but is simply only a *designatio personae*, meaning lawful child or children of H who may be living at his death, the Rule in Shelley's Case does not apply.

7.　A sale and conveyance by the sheriff under the Revenue Act of 1874-5, of the lands of a life tenant for default in payment of taxes on his part, does not operate to convey the interest of the remaindermen.

8.　A tax title which conveys only the interest of the life tenant, is not color of title against the remaindermen, nor is possession thereunder adverse until the death of the life tenant.

9.　Color of title is a paper writing which professes and appears to pass the title, but fails to do so.

10.　Adverse possession, which will ripen a defective title, must be of a character to subject the occupant to action.

ACTION by Mattie Lee Smith and others against Nancy Proctor and others, heard by *Judge W. R. Allen* upon an agreed statement of facts, at the June (Special) Term, 1905, of the Superior Court of NASH County.

The facts pertinent to the questions involved are as follows: In 1867 Isaac Sessums, being seized and possessed of an undivided tract of land in Nash County, containing 150 acres, undertook to convey same to B. H. Sorsby, Sr., trustee, by two deeds, for the purposes therein set forth; the first deed in the portion material to the controversy being as follows: "This indenture, made and entered into this 2nd day of July, 1867, between Isaac Sessums, of the county of Nash, and State of North Carolina, of one part, and B. H. Sorsby, Sr., trustee, and his survivors, of the second part: Witnesseth, that for and in consideration of the sum of one dollar to me in hand paid by the said trustee, the receipt whereof is hereby fully acknowledged, have bargained, sold and conveyed to the said trustee and his survivors, a certain portion of land lying and being in the county of Nash, adjoining

the lands formerly belonging to Elias Barrett and others, on both sides of the road leading to Nashville, to contain forty acres to be taken from the tract where Thursby Griffin now resides, for the following purposes, to-wit: That said trustee and his survivors are required to hold in trust for the benefit of Nancy Hunt, during the term of her natural life, and after the death of said Nancy, to convey the same to the lawful heirs of Isaac T. Hunt, then to the lawful heirs of Thursby Griffin, wife of Benjamin Griffin. In witness whereof I have hereunto set my hand and seal the day and date above written.                        Isaac Sessums.    (Seal)."

Witness, John H. Sharp.

The second deed was as follows: "This indenture made and entered into the second day of July, 1867, between Isaac Sessums, of the county of Nash and State of North Carolina, of the one part, and B. H. Sorsby, Sr., trustee, or his survivors, of the second part: Witnesseth, that for and in consideration of the sum of one dollar to me in hand paid by said trustee, the receipt whereof is hereby fully acknowledged, have this day bargained, sold and conveyed unto him, the said trustee and his survivors, one certain tract or parcel of land lying and being in Nash County, containing 110 acres, more or less, adjoining the lands of Jordan Brewer, the heirs of Henderson Ellen and others, and known as the place where Thomas Hunt formerly resided, for the following purpose, to-wit: That is to say that the said trustee, or his survivors, shall hold in trust the above tract of land for the benefit of Isaac T. Hunt, during his natural life, and in the event of the said Isaac T. Hunt not leaving lawful issue, I hereby empower the said trustee to make  *  *  *  of the above deeded premises to the heirs of Thursby Griffin, wife of Benjamin Griffin, but in case of lawful issue of Isaac T. Hunt, then, and in that case, the said trustee is hereby empowered to make title to the heir of the said Isaac T. Hunt, and also

in further consideration of one dollar in hand paid to me by said trustee, I have bargained, sold and conveyed to him, one mouse-colored mule for the purposes above stated .in regard to the disposition of the land, etc. In witness whereof, I have hereunto set my hand and seal," etc.

ISAAC SESSUMS.     (Seal)."

Witness, etc.

3. That in the year 1876, George N. Lewis, sheriff of Nash County, sold said land for taxes due thereon for years 1874-'75-'76, and conveyed same to one John Killibrew, reciting sale for taxes, and that owner had failed to redeem, etc.

4. That on the 31st day of January, 1884, said John J. Killibrew conveyed said land by quitclaim deed for valuable consideration to one Isaac Proctor. This deed contained a note saying that the land formerly belonged to Isaac Hunt, and was sold by G. N. Lewis for default in payment of taxes on April 3, 1876.

5. That Isaac T. Hunt, referred to in the deeds of Isaac Sessums, died on the 14th day of February, 1903, and plaintiffs are his children and heirs at law, and were born after the year 1884.

This suit was instituted by the plaintiffs on the 18th day of August, 1903.

6. That prior to twenty-five years ago, B. H. Sorsby, named as trustee in both deeds from Sessums, died, and no other trustee has been appointed by the court, or agreed upon by the parties as to the trusts raised in said deeds.

7. That defendants are the widow and heirs at law of the said Isaac Proctor, grantee in the deed from Killibrew, that he died intestate in November, 1894, and defendants and those under whom they claim have been in the exclusive possession of said tract of land, under, and ever since the date of the deed from John J. Killibrew, dated January 31, 1884, claiming it as their own, and exercising the right of ownership over it, etc.

On the facts set out in the case agreed, the judge below was of opinion that plaintiffs could not recover, gave judgment to that effect, and plaintiffs excepted and appealed.

*B. H. Bunn* and *F. S. Spruill* for the plaintiffs.
*Battle & Cooley* for the defendants.

HOKE, J., after stating the facts: The two deeds from Isaac Sessums to the trustee were evidently executed with the design and purpose of conveying the entire tract of 150 acres. The case agreed, in effect, so states.

The second deed, however, is sufficiently definite and comprehensive under certain circumstances to embrace the entire tract of land "known as the place where Thomas Hunt formerly resided," giving also the county and adjoining lands. And if, as defendants contend, the first deed which was made in the effort to cut off forty acres from the land, is void because too vague and indefinite in the description to pass any land, then the second would pass the entire tract.

The court is of opinion that the position of defendants in regard to the first deed from Isaac Sessums set out in the case agreed, is well taken, and the same is void because too vague and indefinite to pass any land. It purports to cut off forty acres from the main body of the land and does not in any way indicate the shape or give any data by which the divisional line can be located. *Robeson v. Lewis,* 64 N. C., 737; *Perry v. Scott,* 109 N. C., 379-380. The deed is therefore void, and the rights of the parties depend on the true construction of the second deed, and the other facts set out in the case agreed.

On this second deed the defendants contend: First, That as same bears date prior to Act of 1879, Code 1883, sec. 1280, the word "heirs" is absolutely necessary to convey a fee. That said word not being in the deed in connection with the trustee's estate, he only took a life estate; that this life

estate terminated by his death twenty-five years ago, and at his death the land reverted to the grantor, or his heirs.

It is true that prior to the Act of 1879 the word "heirs" was generally held necessary to the creation of a fee simple estate in deeds conveying the legal title. It was not so in devises nor in equitable estates, where it was generally held that an estate of inheritance would pass without the word "heirs" if such was the clear intent of the parties. *Holmes v. Holmes,* 86 N. C., 205-207.

A series of decisions have also established the proposition that whenever the word "heirs" appeared in an instrument as qualifying the interest of the grantee and indicative of his estate, whether in the premises, the *habendum* or the warranty, same would be transposed and inserted in that portion of the deed which would cause same to operate as a conveyance of a fee simple interest, when such was the purpose of the grantors. And in *Vickers v. Leigh,* 104 N. C., 248, it was decided that in a deed conveying the legal estate, although the word "heirs" did not appear, the deed would be held to convey an estate of inheritance if the same on its face, contained conclusive, intrinsic evidence that a fee simple estate was intended to pass and that the word "heirs" was omitted from the instrument by ignorance, inadvertence or mistake. This case has since been uniformly upheld and acted on by this court, where the evidence of intent to convey a fee simple was of this character, and appeared so clearly from the face of the instrument that the court could see that the words of inheritance were omitted by mistake. The decisions since this opinion was rendered, which are apparently to the contrary, are cases where the evidence of the mistake could not be drawn exclusively from the instrument itself, but required the aid of facts *dehors* the instrument and the interposition of the equitable powers of the court on allegations of mistake duly made. This case of *Vickers v. Leigh* is cited and

affirmed in *Fullbright v. Yoder,* 113 N. C., 456; *Moore v. Quince,* 109 N. C., 89; *Helms v. Austin,* 116 N. C., 751.

In *Helms v. Austin* the position is taken as accepted doctrine, and in *Moore v. Quince, supra,* was applied to the estate of the trustee as in the case we are now considering. In the deed before us we are of opinion that it was the clear intent of the grantor to pass a fee simple interest in both the legal and equitable estates, the two uniting when the exigency of the trust had terminated. Another principle may be properly invoked to uphold the estate of the trustee. In Am. & Eng. Enc. (2 Ed.), vol. 28, p. 923, it is said: "If there is an axiom of the law it must be regarded as axiomatic in the construction of active trusts that the trustee will take precisely that quantum of legal estate which is necessary to the discharge of the declared powers and duties of the trust. Thus the trustee will take, by implication of law, a fee in the estate when the duties of the trust require it, although the conveyance is in terms of life estate or fails to use the word heirs." In the same volume, at page 924, it is also said: "The estate of trustee will, nevertheless, not extend beyond the term required by the exigiencies of the trust, the unnecessary portions of the estate becoming executed by the statute of uses." The authorities clearly show this to be a correct statement of the doctrine. *North v. Philhook,* 34 Me., 532; 1 Lewin on Trustees, pp. 213, 214.

"If land," said *Lord Hardwick,* "be devised to a man without the word 'heirs' and a trust be declared which can be satisfied in no otherwise but by the trustee taking an inheritance, it has been construed that a fee passes. Thus a trust to sell, even on a contingency, confers a fee simple as indispensably necessary to the execution of the trust." And it is familiar doctrine that a trust shall not fail for the want of a trustee. *Moore v. Quince, supra.*

These deeds from Isaac Sessums were evidently executed as a scheme for the settlement of the property in which the

present plaintiffs, as children of Isaac T. Hunt, were the principal and ultimate beneficiaries of the grantor's bounty.    The general purposes of the deed, the terms in which the estate is declared and the general context, conclusively show that it was the intent of the grantor to pass the absolute ownership of the property, and that the trustee is given an estate commensurate with the exigencies of the trust.

The defendants further contend that under the Rule in Shelley's Case, Isaac T. Hunt took an estate in fee simple under the deed from Isaac Sessums, the deduction being that he being the owner of the land in fee, the sheriff's deed for taxes would convey a like estate to John Killibrew, the purchaser of the tax title, under whom defendants claim.    But the Rule in Shelley's Case does not apply to the deed we are here construing.

A very clear statement of the rule and certain recognized exceptions to it will be found in the case of *Ware v. Richardson,* 3 Md., 505, as follows: "In Shelley's Case, 1 Coke, 104, the rule was laid down on the authority of a number of cases from the Year Books, to be that when the ancestor, by any gift or conveyance, taketh an estate of freehold and in the same gift or conveyance an estate is limited, either mediately or immediately to his heirs, in fee or in tail, 'the heirs' are words of limitation of the estate, and not words of purchase  *  *  *"    *Chancellor Kent,* however, adopts the following definition of the rule by Mr. Preston, as being more full and accurate: "When a person takes an estate of freehold, legally or equitably, under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without interposition of another estate, of an interest of the same legal or equitable quality to his heirs, or heirs of his body, as a class of persons to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate." 1 Preston on Estates, 263.

SMITH *v.* PROCTOR.

"In cases, therefore, where the word 'heirs' or 'heirs of the body' are used, they will be construed to limit or define the estate intended to be conveyed, and will not be treated as words of purchase, and no supposed intention on the part of the testator or grantor arising from the estate being conveyed, in the first instance, for life, will be permitted to control their operation as words of limitation. In all such cases the estate becomes immediately executed in the ancestor, who becomes seized of an estate of inheritance. By force of the unbending construction given to these terms, it imputed to the grantor or testator, in legal contemplation, an intention to use the terms in their legal sense and to give them their legal effect, though it should defeat even the real intention to the contrary. In other words, they are regarded as conclusive evidence of the intent of the testator."

"There are, however, well recognized exceptions to this rule, two of which we will advert to at present in general terms: In the first place, whenever the testator or grantor annexes words of explanation to the word 'heirs,' indicating that he meant to use the term in a qualified sense, as a mere *descriptio personarum* or particular description of certain individuals, and that they, and not the ancestor, were to be the points of *termini* from which the succession to the estate was to emanate or take its start, then in all such cases where the word 'heir' is thus explained or restricted, it is to be treated as a term of purchase, and not of limitation. For example, the expressions 'heirs now living,' 'children,' 'issue,' etc., are words of limitation or purchase as will best accord with the manifest intention of him who employs them. Under this qualification of the rule, the intention prevails against the strict construction."

"The second exception to which we will advert is, that where the estate limited to the ancestor is an equitable or trust estate, the two estates, under the Rule in Shelley's Case, will not coalesce in the ancestor, and the result would be the same

if the estate for life was a legal estate, and that limited to the heirs an equitable estate. *Horne v. Lyeth,* 4 Har. & J., 432."

The deed before us is within the first exception so clearly stated. In the terms of this deed, descriptive of the estate, "the said trustee or his survivors, shall hold in trust the above tract of land for the benefit of the said Isaac T. Hunt during his natural life * * * and in the event of Isaac T. Hunt not leaving lawful issue, I hereby empower the said trustee to convey to the heirs of Thursby Griffin, but in case of lawful issue of Isaac T. Hunt then, in that case, the trustee is hereby empowered to make title to the heir of Isaac T. Hunt."

The words "heir of Isaac T. Hunt," is clearly not intended to denote the whole line of heirs to take in succession as said heirs, "from generation to generation," in the language of Preston's statement of the rule, but is simply only a *designatio personae,* meaning lawful child or children of Isaac Hunt, who may be living at his death. Said Hunt having died leaving lawful children, who are the plaintiffs, we hold the proper construction of the deed as to the interest conveyed to be: That the trustee hold in trust for Isaac T. Hunt for his life, that after his death, the trustee shall convey the land to the lawful children of Isaac T. Hunt, and the exigencies of the trust having terminated on the death of Isaac T. Hunt leaving lawful children, the statute will execute the unnecessary portion of the estate. The sale and conveyance, therefore, of the land by the sheriff for default in payment of taxes on the part of Isaac T. Hunt—the land having evidently been listed as the land of Isaac T. Hunt—did not operate to convey the interest of his children, who take in remainder as purchasers. *Tucker v. Tucker,* 108 N. C., 236, citing *Macay, ex parte,* 84 N. C., 63. This sale was under the statutes of 1874 and 1875, which speak throughout of the sale of delinquent's interest, the one who had listed the property and failed to pay. And moreover, in the Revenue Law for that

year, Acts of 1874-5, ch. 184, sec. 29, subsec. 3, is the
provision: "And it is expressly declared that the lands of a
minor, lunatic or a person *non compos mentis* shall in no case
be taken to be sold for taxes."

It may be well to note that this sale for non-payment of
taxes took place under the provisions of the Act of 1874-5.
Under the Act of 1887 and the Revenue Acts since that time,
so far as we have examined, the State has adopted a different
and more stringent method of enforcing the collection of
taxes. When the taxes are due and the requirements of the
statute otherwise complied with, a sale now conveys the prop-
erty, and not simply the interest of the delinquent. The
statute protects the interests of minors and remaindermen, by
making specific provision as to their right to redeem. We
have here only construed the revenue laws of 1874-5, these
being the statutes governing the rights of the parties in the
present case.

The defendants further contend that if the tax deed does
not convey to them the rights of the plaintiffs, it is good as
color of title, and the defendants and those under whom they
claim having occupied the land since the date of this deed in
1884, asserting ownership, they are protected by the statute
of limitation. This position cannot avail the defendants. In
the first place, while the tax deed does not operate to convey
the interest of the plaintiffs, it does convey the interest of
Isaac T. Hunt, the life tenant. The very definition of color
of title is a paper writing (usually a deed) which professes
and appears to pass the title, but fails to do so. In Words
and Phrases Judicially Defined, vol. 2, p. 1264, it is said to
be, "That which in appearance is title, but which in reality
is no title"—citing many decisions. And for the same
reason, the possession of the defendants was not adverse.
The tax deed under which they occupied the land passed to
them the interest of the life tenant. Adverse possession,

which will ripen a defective title, must be of a character to subject the occupant to action.

If the trustee or these plaintiffs had sued during the life of Isaac T. Hunt, their action would have failed, because the defendants, under their tax deed, held the interest of the life tenant in the property. Their occupation then was neither adverse nor under color of title till the death of the life tenant, which occurred only a short time before the institution of the present suit. And herein lies the distinction between this case and *King v. Rhew,* 108 N. C., 698, cited by defendants. In *King v. Rhew* the estate was conveyed to a trustee in trust for the sole and separate use of Charlotte King (*feme covert*) during her natural life, and after her death to be equally divided between any children she may leave her surviving, etc. Isaac King and wife, in August, 1869, undertook to convey the estate, and by *mesne* conveyances the land passed to the defendant, who occupied and claimed to own the same under his deeds till 1889, when suit was brought. Charlotte King died on September 20, 1889, and the plaintiffs, her only surviving children, instituted the action to recover the land. The deed by which Charlotte King and her husband endeavored to convey the land, was void, and passed no estate or interest of Charlotte King, the life tenant. The court held that the estate of the trustee was barred, and for that reason the children, the *cestuis que trust,* were also barred. That was because the deed of the life tenant being void, the attempted occupation under it was, from the beginning, hostile to the title of the trustee, subjecting the occupant to an action by him from the date of the deed.

In our case, the tax title passed the interest of the life tenant, and the trustee, as stated, could not have successfully maintained his action till the life estate terminated.

Our conclusion on the whole matter is that the deed from Isaac T. Sessums passed the entire estate in the land, the trustee holding for the benefit of Isaac T. Hunt, during his

life, and then in trust to convey the same in fee to his lawful children, who have a present right to recover the property.

There was error in the judgment of the court below, and, on the case agreed, judgment will be entered for the plaintiffs.

Reversed.