This action was brought to recover certain land and personal property by the plaintiff, Clara Beacom, against the defendant, James *Page 291 
Amos. The property in controversy was originally owned by Robert Beacom, who was the father of Hamilton Beacom, Clara Beacom, Mary J. Beacom, and Annie Beacom. Mary J. Beacom married James Amos and predeceased her father, leaving her surviving her husband and the following children: Maggie Amos, Mary Amos Myrtle Amos, Annie E. Amos, and Clara B. Amos. The husband, James Amos, after the death of Robert Beacom, married his wife's sister, Annie Beacom, who died 28 April, 1905, without issue, leaving a will in which she devised and bequeathed her entire estate, real and personal, to her husband, James Amos. Robert Beacom died in 1898, leaving a will in which he devised and bequeathed all of his property to his wife for her life, and subject to her life estate; to Hamilton Beacom he devised a tract of land containing 250 acres, upon the following condition: "To have and to hold the same unto him, the said Hamilton Beacom, and his heirs and and assigns forever: Provided, however, if the said Hamilton Beacom shall die without issue living, then and in that event I give and devise said land above described to my daughters, Clara and Annie (359) Beacom, and their heirs and assigns: Provided further, that in case the said Clara and Annie shall die without issue, then I give and devise said land to the children of James Amos and my daughter Mary J. Amos (the last now dead) who may be living at the time of the death of my son and daughters as above set forth, in fee simple, to be equally divided between them." And also subject to his wife's life estate and the devise to Hamilton Beacom, he devised and bequeathed to Clara Beacom and Annie Beacom the rest and residue of his property, "to have and to hold the same unto them and their heirs, executors, administrators, and assigns absolutely and in fee simple, share and share alike: Provided, however, if either the said Clara or Annie Beacom should die without issue, then the survivor thereof shall take, have, and hold said property absolutely and in fee simple. Referring to the said property above bequeathed and devised to my said daughters Clara and Annie Beacom, it is my will that in the event of the marriage of either of them, then the real estate and such personal property as then may be shall at once be sold by them and the proceeds thereof equally divided between them and to be held by them as above set forth." Robert Beacom had an interest in the estate of J. E. Beacom, deceased, and also in the copartnership of Beacom Brothers, the business of which concern was continued by Hamilton Beacom, as executor of John E. Beacom, after his death, until 11 May, 1900. It further appears that Mary Beacom, widow of Robert Beacom, left a will, by which she bequeathed her interest in the copartnership of Beacom Brothers to her son, Hamilton Beacom. *Page 292 
The case shows that a dispute arose between the children of Robert Beacom, who were also his devisees and legatees, as to their rights and interests in his estate, and as to the settlement of his affairs, especially the business of the firm of Beacom Brothers, and this controversy between them engendered much bitter feeling and some acrimony, when by the kind intercession and tactful efforts of their able attorney and friend, Mr. A. C. Zollicoffer, these conflicting claims and interests were harmonized and adjusted upon terms fully satisfactory to all the parties, and on that day, 11 May, 1900, in order to carry out their agreement and to finally settle all matters of disagreement between them, they executed several deeds, conveying and transferring to each other definite and (360) absolute interests in the property described by them in the said deeds, which were of the following description and character:
First. A deed from the plaintiff, Clara Beacom, to her sister, Annie Amos, reciting the terms of Robert Beacom's will and, further, the wish of the parties to convey to each other certain parts of the property devised to them, so that they might hold the same in severalty, absolutely and in fee simple, free from any claims therein of the one party against the other, the part so definitely described and conveyed. The said Clara Beacom then by deed conveyed to Annie Amos, "in fee simple and absolutely forever," certain tracts of land therein described, and certain articles of personal property, which is the property now in dispute.
Second. On the same day and at the same time, James Amos and wife, Annie, executed their deed conveying to Clara Beacom, with the same recitals and the same estate, certain land therein described. The last two deeds described the land devised by their father to Clara and Annie Amos.
Third. On the same day and at the same time, all of the interested parties, heirs, devisees, and legatees of Robert Beacom, that is, Hamilton Beacom, Clara Beacom, James Amos and wife, Annie Amos, Sallie Beacom, parties of the first part, and James, as trustee of his children (whose names are therein set forth), party of the second part, entered into a deed of settlement as to all their interests and business affairs, the said deed having the following recital: "Whereas, heretofore, during the year 1897, John E. Beacom, late of the county of Vance, died, leaving a last will and testament in which he named Hamilton Beacom as his executor; and whereas at the time of his death his estate consisted mainly of the mercantile business in the town of Henderson, N.C. conducted under the name of Beacom Brothers, and the same has not been settled, but the business has been continued until the present time by Hamilton Beacom as executor; and whereas the parties of the first part were interested in said estate as creditors and legatees and heirs at law; *Page 293 
and whereas Robert Beacom and his wife, Mary Beacom, who were also interested in said estate, are dead, leaving wills in which the (361) parties of the first part are interested as legatees and devisees; and whereas it is the desire of the parties of the first part that there shall be a full, final, and complete settlement of the estate of J. E. Beacom, Robert Beacom, and Mary Beacom among and between the parties of the first part; and whereas a full, final, and complete settlement of the said estate has been agreed on by and between the parties, and as a part of the consideration of the settlement it has been agreed that the land hereinafter described shall be conveyed to James Amos, trustee for his children, Maggie Amos, Mary Amos, Myrtle Amos, Annie E. Amos, Clara B. Amos, in fee simple; and whereas it is the desire of the parties of the first part to carry out said agreement and settlement: Now, therefore, in consideration of the premises and other divers good and valuable considerations, and the sum of $10 to them in hand paid," and so forth. The parties of the first part then conveyed to James Amos, as trustee of his children (by his wife, Mary Amos, formerly Mary Beacom, in fee simple absolute) "all their right, title, and interest" in and to the tract or parcel of land containing 250 acres, which was devised by Robert Beacom, subject to the life estate of his wife, Mary Beacom, to Hamilton Beacom, with contingent limitations over as hereinbefore stated. Mr. A. C. Zollicoffer testified, in substance, that he was the attorney for the respective parties, and helped them to adjust their difficulties and differences, and advised them in the matter. The settlement was intended to be a full and final settlement "of everything between the parties." It related to and embraced the adjustment of the estates of Robert Beacom's three deceased sons, who had successively conducted the mercantile business under the firm name of Beacom Brothers; the settlement of Robert Beacom's estate and of the estate of his widow, Mary Beacom. That Amos, in right of his two wives, was entitled to two shares in the store or business of Beacom Brothers, and Robert Beacom's estate to one share. He wrote all the deeds and the agreement and also the wills. They were written and executed at the same time, as parts of one and the same transaction, and were intended and considered as a final and complete settlement. At first, in order to make the settlement, a sale of the property was proposed, (362) but finally they decided that it should be divided in specie, as was done, Clara Beacom, the plaintiff, having the choice of the parcels and taking the farm, which was considered the more valuable. Hamilton Beacom testified that the consideration of his joinder in the deed to James Amos, as trustee of his children, was the interest of Amos' wives in the store and the sum of $500, which he paid. He had nothing to do *Page 294 
with arranging the terms of settlement as between Clara Beacom and Annie Amos. That was done between themselves. In this connection it may be stated that a deed of settlement, dated 11 May, 1900, between Clara Beacom, James Amos, and wife, Annie Amos, of the first part, and Hamilton Beacom of the second part, was in evidence. It recites their respective interests in the estate of John E. Beacom and in the business and effects of Beacom Brothers, and the unsettled condition of those estates, and further recites the desire of the parties interested to have "a full and final settlement between themselves of their respective interests, as creditors, legatees, and devisees of the estate, and under the wills of John E., Robert and Mary Beacom, and further, that a full and final settlement had been agreed upon, and then states the terms of settlement, viz.: that Hamilton Beacom is to provide for the payment of the claims of James Amos, representing his two wives, against the estate of J. E. Beacom, amounting to $1,646.15, the claim of Clara Beacom against such estate, and all other debts of the same, and in consideration of his having complied with the agreement on his part, they convey to him all their interest in the estate of J. E. Beacom and in the mercantile business of Beacom Brothers, including their interest in the assets and property and in the good-will of the firm of Beacom Brothers, and their interest in the estate of Mary Beacom, and any claim or share Robert Beacom may have had in the estate of J. E. Beacom or in the firm of Beacom Brothers, with habendum to him, the said Hamilton Beacom, his heirs, executors, administrators and assigns forever." This deed was a part of the general settlement.
(363) It was admitted that plaintiff could not recover, as to the personalty, as she was barred by the statute of limitations, and the only property in dispute therefore, is the two lots in Henderson, N.C. which are particularly described in the deed of Clara Beacom to Annie Amos, dated 11 May, 1900.
The court charged the jury that the legal effect of the deed from the plaintiff to Mrs. Annie Amos was to pass the title in fee, and then told the jury, if they believed the evidence, their answers to the issues should be in favor of the defendant. The jury returned the following verdict:
1. Is the plaintiff owner and entitled to the possession of the land described in the complaint? Answer: No.
2. Is plaintiff owner and entitled to the personal property described in the complaint? Answer: No.
3. What is the annual rental value of said lands? Answer: $250.
Judgment was entered thereon for the defendant, and the plaintiff appealed. *Page 295 
After stating the case: The contention of the plaintiff is that the two deeds exchanged between her and her sister, Annie Amos, operated only as a partition of the lands therein described between them, and only ascertained the several shares or portions of each of them as tenants in common of the estate devised to them by their father, and therefore, that each one of them took, not an absolute estate in fee in the part thus allotted to her by the deed from her sister, but a contingent remainder or executory devise, and consequently that each still held the estate in her several share, under the contingent limitation of the will, and it was subject to be divested or determined if she failed to survive her sister. In other words, that the estate of each in her several share was the same as was devised by the will, and not any new estate created by the deed of her sister. It may be conceded, for the sake of argument, that ordinarily a voluntary partition between tenants in common, or one accompanied by deeds, has, in law, only the effect of an assignment to each of the tenants of his several share or part of the common property, merely ascertaining and fixing the physical boundaries (364) thereof, and that no new estate is created or manufactured which was the view taken of such a partition in Harrison v. Ray, 108 N.C. 215;Harrington v. Rawls, 131 N.C. 39; Jones v. Myatt, 153 N.C. 229; but this concession, if carried to the fullest extent justified by those cases and others of like tenor, does not, by any means, sustain the plaintiff's contention, for in this case the parties, by their agreement for a final settlement of all their matters growing out of their rights and interests under the will of their father, and by the very terms of their deeds, have done more than merely set apart ach to the other her several parcel of the land. They have conveyed to each other all the interest and estate in the land they acquired under said will, both vested and contingent. It is expressly stated in the papers (which must be taken as parts of one and the same transaction and read and construed together) that they convey to each other an absolute estate in fee simple forever, which necessarily divests the estate of its contingent character or converts it into a vested estate in fee. In accordance with the principle declared in Harrison v. Ray andHarrington v. Rawls, they would take only the contingent estate given by their father's will, if it had been nothing more than a mere partition, unaccompanied by any conveyance of the contingent interest or of all their interest in the land so acquired, both vested and contingent. It is perfectly clear that the intention, as evidenced by the deeds, was that each should have and enjoy her several *Page 296 
portion as the absolute and unconditional owner thereof in fee, so that the right of survivorship created by the limitation in the will should cease and determine and an indefeasible estate should vest instead thereof. Language could not be employed which would more clearly and certainly convey this meaning than that to be found in these papers. The provision of the deed is that Annie Amos should have "the part of the land devised by the will, and conveyed to her by the plaintiff's deed, in fee simple and absolutely and so that she may hold the same in severalty, free from any claim of her sister," the plaintiff. And this idea pervades the entire series of deeds which were drown by Mr. Zollicoffer and (365) executed by the parties to effectuate their settlement, which was to be a finality. We have often decided that a deed — and the same is true of a series of deeds relating to the same continuous transaction — should be construed as a whole and according to the intention of the parties, as expressed therein, and without regard to the position of its different clauses or its formal divisions, or any technical precision or accuracy of the draftsman in framing the instrument.
This Court, in Gudger v. White, 141 N.C. 597, referring to and adopting what had been said many years before in Kea v. Robeson,40 N.C. 373; and Rowland v. Rowland, 93 N.C. 214, thus stated the modern rule for the construction of deeds: "We are required by the settled canon of construction so to interpret it as to ascertain and effectuate the intention of the parties. Their meaning, it is true, must be expressed in the instrument; but it is proper to seek for a rational purpose in the language and provisions of the deed and to construe it consistently with reason and common sense. If there is any doubt entertained as to the real intention, we should reject that interpretation which plainly leads to injustice, and adopt that one which conforms more to the presumed meaning, because it does not produce unusual and unjust results. All this is subject, however, to the inflexible rule that the intention must be gathered from the entire instrument, `after looking,' as the phrase is, `at the four corners of it.'" And again: "Words should always operate according to the intention of the parties, if by law they may, and if they cannot operate in one form, they shall operate in that which by law will effectuate the intention. This is the more just and rational mode of expounding a deed, for if the intention cannot be ascertained, the rigorous rule is resorted to, from the necessity of taking the deed most strongly against the grantor." This case was followed by Bryan v. Eason,147 N.C. 284, where this sensible and liberal rule of interpretation was approved and applied in the construction of three deeds, which were considered as parts of one indivisible transaction, for the purpose of deciding what estate was conveyed *Page 297 
thereby. See, also, Triplett v. Williams, 149 N.C. 394, and authorities therein cited; Smith v. Proctor, 139 N.C. 314; Vickers v. Leigh,104 N.C. 248; Featherstone v. Merrimon, 148 N.C. 199; Real (366)Estate Co. v. Bland, 152 N.C. 225; In re Dixon, 156 N.C. 26;Thomas v. Bunch, 158 N.C. 175; Highsmith v. Page, ibid., 226; Acker v.Pridgen, ibid., 337; Eason v. Eason, 159 N.C. 539; they being some of the many cases in which this practical rule was applied. In Williamson v.Bitting, 159 N.C. 321, we said: "They (the deeds) were informally and inartificially drawn, but the intent to mortgage all he had in his father's estate, whether real or personal property, is perfectly evident. The law will not allow the plain intention to be defeated by any omission to use technical words to express it, if equivalent terms are employed for the purpose. This we held in Triplett v. Williams, 149 N.C. 394; Gudger v.White, 141 N.C. 513; and very recently in Acker v. Pridgen, 158 N.C. 337;Judge Story, in Tiernan v. Jackson, 5 Peters, 58, said that, `Whatever may be the inaccuracy of expression, or the inaptness of the words used in an instrument, in a legal view, if the intention to pass the legal title to property can be clearly discovered, the Court will give effect to it, and construe the words accordingly."
If these several instruments are viewed in the light of this settled rule, we cannot escape the conclusion that the parties intended to convey to each other, not merely the contingent interest they acquired by their father's will, but the entire, unconditional and absolute estate therein. This being so, the next question is, Could they, by deed, convey this contingent interest? The limitations under the will to the sisters were executory, that is contingent remainders, or, more precisely speaking, cross-remainders. A bare possibility cannot be transferred at law, but by a possibility we mean the interest, or chance of succession which an heir apparent has in his ancestor's estate, the expectancy which one who is next of kin has of coming in for a part of his living kinsman's estate, which a relative may have of having a legacy left to him; and, perhaps, there are other examples. They are uncertain interests and are the true technical possibilities of the common law. 2 Peere Wil., 181; Whitfieldv. Faucet, 1 Ves., 381; Atherly on Man. Settl., 57. But executory devises and contingent remainders are not considered as mere possibilities, but as certain interests and estate. Gurnel v. Wood, Willis, 211; Jonesv. Doe, 3 T. R., 93. Judge Daniel, speaking of these interests (367) and the cases cited above, says in Fortescue v. Satterthwaite,23 N.C. 566: "In the last case the judges seem to have considered it as settled that contingent interests, such as executory devises to persons who were certain, were assignable. They may be assigned (says Atherley, *Page 298 
p. 55) both in real and personal estate, and by any mode of conveyance by which they might be transferred, had they been vested remainders." The validity of such an assignment of a contingent interest is fully recognized in Bodenhamer v. Welch, 89 N.C. 78, where it was held that the contingent remainder of a bankrupt in land passed under the deed of his assignee made in pursuance of a sale of the interest. This doctrine is approved in Watsonv. Smith, 110 N.C. 6; Kornegay v. Miller, 137 N.C. 665. It is not necessary to decide in this case whether the assignment would pass a legal or only an equitable interest, for the defendant has set out the facts in his answer, and relies on them as a defense, and as said by Justice Ashe inBodenhamer v. Welch, supra, "the defendant in such case might have defeated the action by pleading his equitable counterclaim."' which was that the contingent interest had been assigned to him and he was equitably entitled thereto, and, if necessary, he might have called for the legal title. Stithv. Lookabill, 76 N.C. 465; Farmer v. Daniel, 82 N.C. 152.
But the very question involved in this case has been considered by the Court of Appeals of Virginia in Snyder v. Grandstaff, 96 Va. 473, and decided according to the view we have taken of the law. The facts and decision of that case are accurately stated in the syllabus as follows: "A testator devised and bequeathed his entire estate, real and personal, to his three grandchildren, to be equally divided between them, share and share alike, but on the death of either of them without issue, his or her share should pass to the survivors or survivor, and in case all died without issue, then to collateral kin. Subsequently the grandchildren divided the estate amongst themselves, and by deeds reciting the provisions of the will and the partition which they had made, and their desire to `vest exclusive title to several parcels of land in the said parties to whom they had been assigned and allotted respectively,' each conveyed to the (368) other all of his right, title, and interest in the property allotted to such other. One of the grandchildren, in contemplation of marriage, conveyed the property so received by him to his intended wife and then married her, and shortly thereafter died without issue or possibility of issue: Held, the title or survivorship of the two surviving grandchildren passed by their deed to their deceased brother, in his lifetime, and by his deed is vested in his widow." If anything, the facts in this record make a stronger case for the defendant than did those in the case cited for the defendant therein. It is manifest, from a careful examination of the deeds and other relevant documents in evidence, that the parties intended to convey an exclusive and indefeasible title, each to the other. The opinion of Judge Thomas W. Harrison in the Virginia case we have cited, which was adopted and quoted by the Court of *Page 299 
Appeals, discusses the question so fully and lucidly and, too, so conclusively, that we merely refer to it for the benefit of any one who may wish further light upon the subject, and, ourselves, forbear further discussion.
It follows from what we have said that the judgment of the Superior Court is correct and should not be disturbed.
No error.
Cited: Guilford v. Porter, 167 N.C. 368; Phifer v. Mullis, ib., 409;Spencer v. Jones, 168 N.C. 292; Weil v. Davis, ib., 303; Morton v. WaterCo. ib., 588; Scott v. Henderson, 169 N.C. 661; Ford v. McBrayer,171 N.C. 425; Springs v. Hopkins, ib., 495; Lee v. Oates, ib., 725, 726.